[No. 42629-0-I. Division One. January 31, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. SETAIMATA SOONALOLE, *Appellant*.

*Eric Broman* of *Nielsen Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Andrew J. Ries, Deputy*, for respondent.

PER CURIAM — For the purposes of the constitutional guaranty against double jeopardy, whether a defendant may be convicted of multiple violations of a single criminal statute depends upon what the Legislature intends the "unit of prosecution" to be. Here, the facts reveal that Setaimata Soonalole committed two separate and distinct offenses or "units of prosecution" differentiated by time, location, and intended purpose such that there is no violation of double jeopardy. The conviction and sentence are affirmed.

## FACTS

MT, age 15, and her family lived with Soonalole and his family in southwest Seattle. Soonalole's wife was recovering from surgery in a Seattle hospital. One night Soonalole's son stayed at the hospital to be with his mother. The next morning Soonalole was going to pick up his son and visit his wife. MT asked to ride along to visit as well. Soonalole agreed and they began the drive to the hospital.

MT and Soonalole's versions differ from here. MT testified that a few blocks from the apartment Soonalole grabbed MT's hand and told her he admired her rings and that she was pretty. She said that a short time later he reached his arm around her and began to fondle her breasts over her blouse and also began to rub her thighs. MT asked him to stop, but he continued for some time, eventually stopping. Soonalole exited from a major thoroughfare and proceeded through a local neighborhood. Soonalole pulled his car into a wooded spot across from the Pacific Medical Center. Soonalole turned to MT and started rubbing her breasts and thighs again. This time he also attempted to get under MT's blouse and tried to put his hand down her pants. She stopped him after he reached "the end of her stomach." MT tried to get out of the car, but Soonalole told her that if she did, he would run over her. He then began rubbing her breasts again. Eventually Soonalole told MT not to tell anyone and proceeded to drive to the hospital.

After picking up his son, Soonalole drove back to the apartment. MT refused to ride in the front seat. Soonalole stopped at the bank and withdrew $10 and gave it to MT. Again, he told her not to say anything, especially to her parents. MT immediately told her sister upon returning to the apartment.

The next day Soonalole grabbed MT as she was leaving the bathroom. He pushed her to the floor, but she pushed him off of her and fled the apartment. MT ran to her mother and told her the whole story. Her mother confronted Soonalole, who denied doing anything. Friends came and picked up MT and her family from the Soonalole apartment and police officers were called. After being given his *Miranda* rights, Soonalole admitted to kissing MT the day before to "calm her down," but denied any sexual contact. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

Soonalole's version of the trip to the hospital was quite different. He denied ever stopping the car, or kissing or touching MT in a sexual manner. At trial, Soonalole denied

any sexual conduct, but there was testimony from others about his actions after the incident, including his asking MT's parents and his wife for forgiveness. Soonalole and his wife denied that this event ever took place.

Soonalole was charged and convicted by a jury of child molestation in the third degree, attempted child molestation in the third degree, and assault in the fourth degree. He appeals.

## DISCUSSION

Soonalole contends that imposing two convictions under RCW 9A.44.089, for child molestation in the third degree and the lesser included attempted child molestation in the third degree, violates the state and federal constitutional prohibitions against double jeopardy. He claims the State improperly charged him with two separate crimes arising out of the same incident.[1]

The prohibition against double jeopardy protects an individual from multiple punishments for the same offense, imposed at a single criminal proceeding.[2] When a person is charged with violating the same statutory provision a number of times, multiple convictions can stand only if each is a separate "unit of prosecution."[3]

In *State v. Adel*, the court concluded that the proper inquiry for considering double jeopardy challenges, in those cases where a defendant is convicted of violating the same statute multiple times, is what "unit of prosecution" the Legislature has intended as a punishable act under the

---

[1]Although Soonalole did not raise the double jeopardy issue at trial, constitutional double jeopardy challenges may be raised for the first time on appeal. *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

[2]*State v. Tili*, 139 Wn.2d 107, 112, 985 P.2d 365 (1999); *Adel*, 136 Wn.2d at 632; *State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).

[3]*Adel*, 136 Wn.2d at 633-34 (citing *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955)); *see also Tili*, 139 Wn.2d at 113.

statute.[4] "The first step in the unit of prosecution inquiry is to analyze the criminal statute."[5] If the Legislature failed to denote the unit of prosecution in a criminal statute, the United States Supreme Court has declared the ambiguity should be construed in favor of lenity.[6]

■ In Soonalole's circumstances, the Legislature has defined child molestation in the third degree as:

> A person is guilty of child molestation in the third degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

RCW 9A.44.089(1). The Legislature further defined sexual contact as:

> [A]ny touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.

RCW 9A.44.010(2). The language of the statute reveals that the Legislature defines the unit of prosecution for child molestation in the third degree as each separate act of sexual contact. Recently, in *State v. Tili*, our State Supreme Court rejected a claim that convictions for three counts of rape in the first degree violated double jeopardy. In affirming the three convictions, the *Tili* court noted that the unit of prosecution defined in the rape statute was violated on any penetration, no matter how slight.[7] The same rationale is true with respect to child molestation charges. This holding is bolstered by the Legislature's concern for the protection of sexual assault victims, espe-

---

[4]*State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998); *see also Tili*, 139 Wn.2d at 113.

[5]*Adel*, 136 Wn.2d at 635; *see also Tili*, 139 Wn.2d at 113.

[6]*Adel*, 136 Wn.2d at 634-35 (citing *Bell v. United States*, 349 U.S. at 84); *see also Tili*, 139 Wn.2d at 113.

[7]*State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999).

cially children, and that the protection is best accomplished by separately punishing each separate invasion of a protected area. *State v. Grantham.*[8]

The court in *State v. Grantham* also cited a Wisconsin case, *Harrell v. State,* which stressed its concerns about the lack of consequences for additional sexual assaults on the same victim:

> Repeated acts of forcible sexual intercourse are not to be construed as a roll of thunder,—an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.[9]

Also providing guidance are state and federal cases specifically addressing whether sequential sexual assaults constitute single or separate units of prosecution. In *Harrell v. Israel,*[10] the federal district court rejected the defendant's double jeopardy argument and affirmed rape convictions for two acts of sexual intercourse with the same victim, at the same location, within 25 minutes. The court looked to Wisconsin's rape statute and the legislative intent and determined that rape's "unit of prosecution" was not continuous. As the court stated:

> While the means and manner are the same, the intent of [the defendant] was to commit two acts and, therefore, the acts are punishable as separate offenses. In no way can the situation

---

[8]*State v. Grantham,* 84 Wn. App. 854, 860, 932 P.2d 657 (1997) (citing *State v. Williams,* 105 N.M. 214, 730 P.2d 1196 (1986) and *People v. Madera,* 231 Cal. App. 3d 845, 282 Cal. Rptr. 674 (1991)).

[9]*Harrell v. State,* 88 Wis. 2d 546, 277 N.W.2d 462, 469 (1979).

[10]*Harrell v. Israel,* 478 F. Supp. 752 (E.D. Wis. 1979).

be construed as similar to possessory offenses and bigamy which are by their continuing nature continuous offenses.[11]

Similarly, in *Vaughan v. State*,[12] the Missouri Court of Appeals rejected the defendant's double jeopardy claim based on two rape convictions for raping the same woman in her bed within 25 to 55 minutes. In determining whether the multiple rapes constituted multiple crimes or a single crime, the court looked to a variety of factors: time, place of commission, and, of most importance, the defendant's intent. The court found that the defendant formed a separate intent for each rape and that each rape violated the victim's integrity and safety.

We agree with the rationale of *State v. Tili* and the other state and federal cases and conclude that the unit of prosecution as defined by the Legislature and the time, location, and intended purpose factors support the conclusion that Soonalole committed separate acts of child molestation.[13] Because Soonalole's conduct constituted two separate and distinct acts of sexual contact, his conviction for both counts does not violate double jeopardy.

 Soonalole also claims the trial court improperly admitted unnecessarily repetitive and prejudicial testimony to bolster the victim's credibility. This alleged error was not preserved for review. When no objection is made at trial, an alleged evidentiary error is not preserved for

---

[11]*Harrell v. Israel*, 478 F. Supp. at 755-56 (citing *In re Snow*, 120 U.S. 274, 7 S. Ct. 556, 30 L. Ed. 658 (1887)).

[12]*Vaughan v. State*, 614 S.W.2d 718 (Mo. Ct. App. 1981).

[13]The first act, the fondling and thigh rubbing over the victim's clothes, occurred while driving on the West Seattle Bridge. Later, Soonalole parked the car in a somewhat remote spot on the north side of Beacon Hill. There he not only fondled MT's breasts and thighs, but also put his hands underneath her clothing and put his hand down the front of her pants. Soonalole clearly completed one act of molestation and retreated from MT during part of the drive. He then parked the car and proceeded to molest MT again. This also shows his separate intent as to each charged crime of molestation. This fact is evidenced by the fact that Soonalole escalated his sexual contact during the second molestation by attempting to reach under MT's clothing and to reach her vaginal area.

review.[14] In order to have a trial court err in the admission of testimony, or to preserve the issue for appeal, it is necessary for objections to be made at trial to allow the trial court the opportunity to rule on such an objection.

▪ Soonalole acknowledges that the claimed error was likely not preserved. However he attempts to bootstrap his claim as one of ineffective assistance of counsel. Claims of ineffective assistance of counsel are of constitutional magnitude and may be brought for the first time on appeal.[15]

▪ In order to support a claim of ineffective assistance of counsel, Soonalole must make two showings: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."[16] The competency of counsel and his or her representation of the defendant is determined based upon the entire record below.[17]

▪▪ Our review of trial counsel's performance is highly deferential and begins from a strong presumption that the representation was both effective and reasonable.[18] A legitimate trial strategy cannot be categorized as deficient performance and cannot be the basis for an ineffective assis-

---

[14]*State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995) (citing *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986)).

[15]*State v. Alvarado*, 89 Wn. App. 543, 548, 949 P.2d 831, *review denied*, 135 Wn.2d 1014 (1998).

[16]*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[17]*McFarland*, 127 Wn.2d at 335 (citing *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972)).

[18]*State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995).

tance claim.[19] Thus Soonalole must show an absence of legitimate strategic reasons to support the challenged conduct.[20]

An examination of the record reveals that counsel's performance was not deficient. Using the various statements MT made, counsel attempted to undermine her credibility. The statements to her sister, her mother, and her uncle could be classified as inconsistent, at least in part. In closing argument counsel argued that the case was a straight credibility call between Soonalole and MT. Counsel claimed that MT's testimony was not credible because she told different versions of the events to her mother and uncle. The record clearly establishes that defense counsel's failure to object to these repetitions was a tactical decision. There was no ineffective assistance of counsel.

The judgment and sentence are affirmed.

Reconsideration denied April 25, 2000.

Review denied at 141 Wn.2d 1028 (2000).

---

[19]*State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991).

[20]*McFarland*, 127 Wn.2d at 336.